**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000014
16-JUL-2014
07:58 AM**

NO. CAAP-13-0000014

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


RUTH TANAKA,
Plaintiff-Appellant/Cross-Appellee,
v.
LOUIS ROBERT SANTIAGO and YONG HWAN SANTIAGO,
Defendants-Appellees/Cross-Appellants


APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. RC-12-1-0299)

MEMORANDUM OPINION
(By:  Foley, Presiding J. and Leonard, J.
with Ginoza, J. concurring separately)

Plaintiff/Appellant/Cross-Appellee Ruth Tanaka (**Tanaka**) appeals from the (1) November 13, 2012 "Memorandum"; (2) December 21, 2012 "Order Granting Defendant's Motion for Summary Judgment on Ruth Tanaka's First Amended Complaint," (3) December 21, 2012 "Final Judgment," and (4) December 21, 2012 "Order Denying Plaintiff Ruth Tanaka's Motion for Reconsideration." Defendants/Appellees/Cross-Appellants Louis Robert Santiago and Yong Hwan Santiago (together, **Santiagos**) appeal from the (1) December 21, 2012 "Order Denying Defendants Louis Robert Santiago and Yong Hwan Santiago's Motion for Attorney Fees and Costs," and (2) December 21, 2012 "Final Judgment."  The memorandum, orders, and judgment were entered in the District Court of the Fifth Circuit[1] (**district court**).

On appeal, Tanaka contends the district court erred when it (1) granted summary judgment in favor of the Santiagos,

---

[1] The Honorable Edmund D. Acoba presided.

and (2) denied Tanaka's motion for reconsideration. On cross-appeal, the Santiagos contend the court erred when it denied their motion for attorneys' fees under Hawaiʻi Revised Statutes (**HRS**) §§ 607-14 (Supp. 2013) and 607-14.5 (Supp. 2013).

## I. DISCUSSION

### (A) Tanaka's appeal is without merit.

We review summary judgments de novo. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008). Under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(c), the district court must grant a motion for summary judgment when the moving party: (1) has shown that there is no genuine issue regarding any material fact, and (2) is entitled to judgment as a matter of law. Id. "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Id. If the moving party meets its burden of production, the non-moving party must present admissible evidence showing specific facts about essential elements of each claim to avoid summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. See Kamaka, 117 Hawaiʻi at 104, 176 P.3d at 103.

Tanaka contends the district court erred by granting the Santiagos' motion for summary judgment because the district court denied an "essentially identical motion two weeks earlier," and genuine issues of material fact were established by Tanaka's declaration and exhibits. Tanaka also contends the motion to dismiss was automatically converted into a motion for summary judgment because matters outside the pleadings were considered. The basis of the district court's denial of the motion to dismiss is unclear:

> Mr. Goldberg [(Tanaka's Counsel)]: What I'm saying, your Honor -- and I just want to point out it's a little bit confusing. Judge Rothschild heard the motion. As far as I know, he decided the motion, but your Honor signed the order.
>
> THE [DISTRICT] COURT: The reason I signed it . . . is because what I saw is a note by Judge Rothschild saying prepare the order -- motion denied. Prepare the order. The

order was prepared, signed by Mr. Arensmeyer [(counsel for the Santiagos)]. Rather than bringing Judge Rothschild for $500 to have him sign the order being that I just saw his note, saw an agreement as to the proposed order signed by Mr. Arensmeyer, so I just signed it.

MR. GOLDBERG: That's exactly what I figured. So when I make that assumption that Judge Rothschild denied the motion, I think the [district court] -- we're saying the same thing.

But my point is, they then file what they call a motion for summary judgment. But, your Honor, it's the exact same motion, same grounds, most of the same exhibits. There's nothing different about it. And, I mean, we kind of assumed the motion would be summarily denied out of hand because it had already been denied two weeks earlier.

I understand [the district court] went through and wanted to do a diligent job and make the appropriate decision, but my point is that it had already been decided by Judge Rothschild two weeks earlier.

And when they come back now and say well, this is [HRCP] Rule 56, and this is [HRCP] Rule 12, no. It's the same because. [sic]. [HRCP] Rule 12(b) is mandatory. They attached matters outside the pleadings.

So my point, your Honor, is when they then file[d] that motion for summary judgment, it was really a motion for reconsideration of the [district court's] denial of their motion to dismiss which automatically was disposed of in summary judgment.

THE [DISTRICT] COURT: Do you think maybe Judge Rothschild should have sat on the motion for summary judgment then? If you're saying it was a reconsideration.

MR. GOLDBERG: You know --

THE [DISTRICT] COURT: That was your -- that was your theory.

MR. GOLDBERG: There's no such requirement. I mean, to answer your Honor's question, I know as a matter of routine, it's typical for one judge to let the original judge hear the motion for reconsideration. I understand that, but that's not a requirement.

And by the way, the opposite is true. If [the district court] felt that Judge Rothschild erred, [the district court] has the power to rule differently. I understand that. But I don't think -- that's not my understanding of what [the district court] did.

And so when they filed what I'm calling a de facto motion for reconsideration, and they come into a new judge and say here's our motion for summary judgment, and I say hold on, that's already been decided by another judge in [the district court], that's a motion for reconsideration, and so they need grounds.

THE [DISTRICT] COURT: But without making findings as to what Judge Rothschild was thinking, then how is [the district court] supposed to know if it's the same -- or same type of motion or -- because the motion to dismiss could be

based on just pleadings. Just on the pleadings, he could have said okay, denied.

MR. GOLDBERG: Except that [HRCP] Rule 12(b) precludes that assumption, your Honor. [HRCP] Rule 12(b) says -- it's a two-parter: Shall be treated as one for summary judgment, and shall be disposed of pursuant to [HRCP] Rule 56.

So I got to assume that Judge Rothschild did what the Rule says, and I can't assume that he didn't follow the Rules. They're assuming that he didn't follow the Rules. I don't think that's a fair assumption.

Now, I suppose if [the district court] wanted to say, you know what, this motion should have been heard by Judge Rothschild, fair enough.

But the point is, that was essentially a motion for reconsideration. And we came in and said that's already been decided. You know, here's the argument.

Regardless of whether the court's denial of the motion to dismiss was actually a denial of summary judgment, or whether the subsequent grant of summary judgment was actually a grant of a motion to reconsider, we would disturb the decisions only if the Santiagos were not entitled to judgment as a matter of law. See generally Towse v. State, 64 Haw. 624, 629, 647 P.2d 696, 701 (1982) (appellate court is not foreclosed from recognizing the true nature of an order by the label put on it by the circuit court; the Towse court reviewed a motion to dismiss under the summary judgment standard where the order granting dismissal provided "this Court having considered all memoranda of law, the record on file herein and argument of counsel").

The Santiagos are entitled to judgment as a matter of law because Tanaka failed to present admissible evidence showing the existence of a legal obligation entitling her to the requested relief. See Celotex, 477 U.S. 317, 322-23 (if the moving party meets its burden of production, the non-moving party must present admissible evidence showing specific facts about essential elements of each claim to avoid summary judgment).

In 2006, the Santiagos purchased real property located on Kauaʻi, Hawaiʻi (**the Property**) from Tanaka. On August 5, 2008, the Santiagos sued Tanaka in the Circuit Court of the Fifth Circuit (**Fifth Circuit Court**), Civil No. 08-1-0094, ultimately raising one claim against Tanaka for allegedly failing to disclose the existence of a private sewer system (**Disclosure**

**Case**).[2]  Tanaka counter-sued, raising claims for breach of mortgage, breach of the covenant of good faith and fair dealing, judicial foreclosure, and ejectment.  Tanaka's counterclaim arose from the parties' agreements concerning the purchase and sale of the Property, specifically the sales contract, promissory note, and mortgage for the Property (collectively, **Purchase and Sale Instruments**).[3]

In the case at bar, Tanaka asserted two claims, one for sewer arrearages and the other for reimbursement of related legal fees and costs Tanaka paid to James Jasper Enterprises, Ltd. (together, **Jasper fees**), allegedly so she could sell the Property.[4]  Tanaka contends the Santiagos' legal obligation to reimburse her for the Jasper fees arises from the Purchase and Sale Instruments, as well as the decision in the Disclosure Case:

> 6. [The Santiagos] purchased the Property from [Tanaka] in 2006 pursuant to seller financing. See **Exhibit" A"** (Contract) (incorporated by reference as if fully set forth herein). [The Santiagos] signed the Contract.
>
> 7.  Per the promissory note and a standard mortgage, [The Santiagos] were the borrowers/mortgagors, and [Tanaka] was the lender/mortgagee, with respect to a $500,000 debt on the Property. See **Exhibit "B"** (Promissory Note) and **Exhibit "C"** (Mortgage) (both incorporated by reference as if fully set forth herein). [The Santiagos] signed the Promissory Note and the Mortgage.
>
> 8.  On March 10, 2008 (the monthly payment deadline), Mr. Santiago announced in his own handwriting that he was halting all payments to [Tanaka]. [The Santiagos] did not make the required payment.  Accordingly, [Tanaka] noticed their default, accelerated full payment on the Promissory Note and initiated a non-judicial foreclosure pursuant to the Mortgage and applicable law.  See HRS § 667-5

---

[2]  The Santiagos' first amended complaint asserted seven claims against Tanaka: (1) Breach of Agreement, (2) Breach of Good Faith and Fair Dealing, (3) Negligent Misrepresentation, (4) Non-Disclosures, (5) Violation of Due Process, (6) Breach of Duty of Good Faith Mediation, (7) Violation of HRS § 667-42.

[3]  The Fifth Circuit Court found Louis Robert Santiago received ample notice of the private sewer system during the purchasing process, and entered judgment on June 8, 2011, concluding the foreclosure was proper, and that Tanaka was entitled to possession of the Property and reimbursement for attorneys' fees.  This decision is currently before our court in case no. CAAP-11-0000697.

[4]  Per an agreement with Tanaka, James Jasper Enterprises, Ltd. operated a private sewer system servicing the Property.  In the Disclosure Case, the Santiagos alleged Tanaka failed to disclose the existence of this agreement.  A separate agreement was formed between James Jasper Enterprises, Ltd. and the Santiagos to cover past and future payments for servicing the Property while the Santiagos held title.

(Foreclosure under power of sale). (Effective June 3, 2008, three months after the instant default, the Legislature amended Section 667-5. Such changes are inapplicable here. See 2008 Hawai'i Laws Act 138 (S.B. 2454), Section 5.)

9. [The Santiagos] filed another related case against [Tanaka] in the [Fifth Circuit Court], asserting disclosure claims regarding the tavern's sewer service. See Verified Complaint (filed May 5,2008), Santiago v. Tanaka, Civ. No. 08-1-0094 (Watanabe, J.).

10. In response to [the Santiagos'] non-payment, [Tanaka] asserted counterclaims for breach and ejectment. See [Tanaka's] Answer to First Amended Verified Complaint Filed August 5, 2008 and Counterclaim (filed Oct. 24, 2008).

11. The Honorable Kathleen N.A. Watanabe presided over a bench trial on May 2-5, 2011. [Tanaka] prevailed in almost all respects: (1) the [Fifth Circuit Court] rejected all of [the Santiagos'] claims; (2) the [Fifth Circuit Court] granted most of [Tanaka's] counterclaims; and (3) the [Fifth Circuit Court] awarded attorneys' fees and costs to [Tanaka]. See **Exhibit "D"** (Decision) and **Exhibit "E"** (Judgment) (both incorporated by reference as if fully set forth herein). The [Fifth Circuit Court's] Decision and Judgment are final and legally binding on [the Santiagos] at this time.

12. [Tanaka] respectfully refers [the district court] to the [Fifth Circuit Court's] Decision, which sets forth detailed findings of fact and conclusions of law to support the Judgment. Such findings and conclusions are legally binding on [the Santiagos] in this case, pursuant to the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion).

. . . .

19. After months of efforts, [Tanaka] sold the Property to a third party on or about May 1,2012. See Declaration of [Tanaka] (filed May 2, 2012), CAAP-11-0000697 (ICA). In connection with such sale, James Jasper Enterprises, Ltd. ("Jasper"), the owner of the private sewer system, required [Tanaka] to pay the sewer arrearages from August 1,2011 through March 1,2012 in the amount of $4,884.94.

. . . .

21. Mrs. Tanaka was forced to pay such amount, and she did so, in order to enable sewer service to the Property.

. . . .

24. The sewer arrearages arise directly from, were proximately caused by and are the natural and foreseeable consequences of [the Santiagos'] conduct in this matter (including, but not limited to, [the Santiagos'] material breaches of their contractual obligations pursuant to the Contract, the Promissory Note and the Mortgage).

25. The [Fifth Circuit Court's] Decision and Judgment confirm that [the Santiagos], and not [Tanaka], should pay the sewer arrearages.

26. Pursuant to the letter, the spirit and the intent of the Contract, the Promissory Note, the Mortgage, the Decision and the Judgment, [the Santiagos] are jointly and severally liable for the sewer arrearages.

. . . .

29. After months of efforts, [Tanaka] sold the Property to a third party on or about May 1, 2012. See Declaration of [Tanaka] (filed May 2, 2012), CAAP-11-0000697 (ICA). In connection with such sale, Jasper required [Tanaka] to pay Jasper's reasonable attorneys' fees and costs in the amount of $23,028.23 (including, but not limited to, fees and costs associated with providing sewer service to the Property).

. . . .

31. [Tanaka] was forced to pay such amount, and she did so, in order to enable sewer service to the Property.

32. [Tanaka] was not and is not liable for [Jasper's legal fee].

33. In connection with paying [Jasper's legal fee], [Tanaka] specifically and expressly reserved her rights to seek reimbursement of same from [the Santiagos].

34. The [claim for Jasper's legal fee] arise[s] directly from, [was] proximately caused by and [is] the natural and foreseeable consequences of [the Santiagos'] conduct in this matter (including, but not limited to, [the Santiagos'] material breaches of their contractual obligations pursuant to the Contract, the Promissory Note and the Mortgage).

35. The [Fifth Circuit Court] Decision and Judgment confirm that [the Santiagos], and not [Tanaka], should pay [Jasper's legal fee].

36. Pursuant to the letter, the spirit and the intent of the Contract, the Promissory Note, the Mortgage, the Decision and the Judgment, [the Santiagos] are jointly and severally liable for [Jasper's legal fee].

(Emphases added.) In addition to the exhibits mentioned above, Tanaka attached to her complaint invoices for the Jasper fees.

To the extent Tanaka bases her claim for Jasper fees on the Santiagos' breach of the Purchase and Sale Instruments, she is barred by claim preclusion. Claim preclusion applies when a party shows that "(1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question." Eastern Savings Bank, FSB v. Estaban, 129 Hawai'i 154, 159, 296 P.3d 1062, 1067 (2013) (citing Bremer v. Weeks, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004)). The doctrine also prohibits a new

7

action in any court between the same parties "concerning the same subject matter, and <u>precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.</u>" <u>Id.</u> at 159, 296 P.3d at 1067 (emphasis in original).

The Disclosure Case was a final judgment on the merits and was litigated by the same parties as in the instant case. Consequently, we ask whether the present claims are identical to the counterclaims decided in the Disclosure Case, or might have properly been litigated in the Disclosure Case. "To determine whether a litigant is asserting the same claim in a second action, the court must look to whether the 'claim' asserted in the second action arises out of the same transaction, or series of connected transactions, as the 'claim' asserted in the first action." <u>Kauhane v. Acutron Co., Inc.</u>, 71 Haw. 458, 464, 795 P.2d 276, 279 (1990) (citing Restatement (Second) of Judgments § 24 (1982)). <u>Kauhane</u> held claims in two suits were identical where both suits' claims arose from the same contractual agreement:

> As in the prior action, Plaintiff premises his claims in the present action solely upon violations of the terms of the Apprenticeship Agreement. Specifically, Plaintiff asserts that Acutron breached the Apprenticeship Agreement by terminating him without good cause in violation of the terms of that Agreement. Plaintiff also asserts in both actions that Acutron improperly fired him without the prior approval of the DLIR, again in violation of the terms of the Apprenticeship Agreement. Plaintiff's claims thus allege violations of the same Agreement. Plaintiff's claims in the prior action and in the present action, therefore, all arise out of the same transaction and accordingly, constitute the same "claims" for res judicata purposes.

<u>Id.</u> at 464, 795 P.2d at 279.

The present matter is analogous. Tanaka contends the Santiagos' obligation to reimburse her for the Jasper fees arises from their breach of the Purchase and Sale Instruments, or more simply, that the Jasper fees Tanaka paid were damages which flowed from the Santiagos' breach. The Disclosure Case already adjudicated Tanaka's breach of contract claim:

**II. Defendant's Counterclaim**

. . . .

> AN.  Defendant provided seller financing to Plaintiffs.  When Plaintiffs announced the halting of payments, and halted payments, Plaintiffs posed a threat to Defendant's financial security.  She had no way of knowing that Plainthffs would seek to return to monthly payments.  She exercised her legal rights.  Given Plaintiffs' conduct, she was unwilling to agree to monthly payments, and she was under no obligation to do so.
>
> . . . .
>
> AZ.  The foreclosure is complete.  Title was conveyed pursuant to statute.  Defendant is entitled to possession without further delay.
>
> BA.  Mr. Richardson is an experienced real estate broker (he served as President of the Hawaiʻi Association of Realtors), a teacher of Hawaiʻi real estate professionals (he is Founder and President of the Hawaii Academy of Real Estate, LLC) and a former Hawaiʻi Certified Public Accountant.  *See* Exhibit D-13.  <u>As Defendant's property manager, he handled the  accounting for this property.  Based on his own personal knowledge, he testified that Plaintiffs are indebted to Defendant in the amount of $79,441.55.  While his testimony is credible, and Plaintiffs did not offer evidence to the contrary, the Court declines to award damages in this case</u>.

(Emphasis added.)  And assuming Tanaka was required to pay the Jasper fees to sell the Property, invoices for sums paid after the Disclosure Case decision do not create a legal obligation requiring the Santiagos to reimburse Tanaka for the Jasper fees.  Nor do mere allegations.  See Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions.

Claim preclusion's requirement that a claim be actually litigated, or at a minimum, could have been litigated, extends the doctrines' preclusive effect to rights that were in existence at the time of the first suit.  See generally Eastern Savings Bank.  By this logic, the preclusive effect does not reach rights that had not accrued at the time of the earlier proceeding, nor would the doctrine prohibit examination of the same question between the same parties when new facts have occurred which would alter the legal rights between the parties.  Tanaka, however, has failed to show the existence of any such right, i.e., an entitlement to reimbursement for the Jasper fees that did not exist at the time of the first suit.

Tanaka declared a new fact that (she was required to pay the Jasper fees to sell the property) altered the legal

rights of the parties such that a new entitlement (reimbursement for the Jasper fees) arose from the breach established in the Disclosure Case. However, Tanaka's asserted conclusion is contradicted by her own complaint and declaration, which provided that her alleged new right, and the Santiagos' obligation, was a "foreseeable consequence" of the Santiagos' breach. Consequently, the purported right could have been properly litigated in the first suit and Tanaka's present claim is precluded as a matter of law.

Tanaka contends further that per <u>Ralston v. Yim</u>, 129 Hawai'i 46, 292 P.3d 1276 (2013), the Santiagos were not entitled to summary judgment before the commencement of discovery because the Santiagos, as the movant, failed to demonstrate that Tanaka would be unable to carry her burden of proof at trial. Tanaka's reliance on <u>Ralston</u> is misplaced. <u>Ralston</u> held

> In sum, this court's case law indicates that a summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial. Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial. Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded.

<u>Ralston</u>, 129 Hawai'i at 60-61, 292 P.3d at 1290-91 (citations and emphasis omitted). Since Tanaka's claims were barred as a matter of law, she could not carry her burden of proof at trial.

Because Tanaka's claims are barred as a matter of law, the district court did not abuse its discretion by denying the motion for reconsideration. <u>See</u> <u>Cho v. State of Hawai'i</u>, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007) ("The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard.").

**(B) The Santiagos' appeal.**

**(1) The district court abused its discretion when it denied the Santiagos' motion for attorneys' fees and costs under HRS § 607-14 District Court Rules of Civil Procedure (DCRCP) Rule 54.**

On cross appeal, the Santiagos contend the district court "clearly exceeded the bounds of reason and disregarded [HRS

§§] 607-14 and 607-14.5 . . . as well as [DCRCP Rule 54]" when it denied their motion for attorneys' fees. The district court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard. See Sierra Club v. Dep't of Transp. of State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009). A trial court's conclusion that a claim was "made in good faith" and was not frivolous presents mixed questions of fact and law. See Coll v. McCarthy, 72 Haw. 20, 28, 804 P.2d 881, 886 (1991). Where the trial court's conclusions are dependent upon the facts and circumstances of each individual case, the clearly erroneous standard of review applies. See id.

The Santiagos contend that since Tanaka sued for $25,000, "at a minimum, the Santiagos as the prevailing parties could recover up to $6,250.00 in attorneys' fees pursuant to [HRS §] 607-14 . . . as well as their entire costs pursuant to Rule 54." The Santiagos also allege Tanaka's claims are "frivolous, having no sound basis in law or fact," and therefore are not confined to the 25% limitation under HRS § 607-14.

Tanaka contends the denial was proper for six reasons: (1) the motion was filed on the wrong island, (2) the motion was premature, (3) the Santiagos are estopped from seeking fees under the assumpsit statute, (4) the fee request exceeds the statutory request, (5) Tanaka's claims are not frivolous, and (6) the fee request was excessive.

Under HRS § 607-14, an award of attorneys' fees to the prevailing party is required when the action is in the nature of assumpsit: "in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party . . . a fee that the court determines to be reasonable[.]" The denial of a request made under 607-14 must have support in the record. See Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 33, 79 P.3d 119, 126 (2003). Under HRCP Rule 54(d), a "presumption exists in favor of awarding costs to the prevailing party and that presumption must be overcome by the losing party." Hinshaw, 103 Hawai'i at 32, 79 P.3d at 125. "Furthermore, a court must adequately explain its reasons for denying or reducing costs unless its reasons are clear from the record." Id.

Here, the district court provided no explanation for the denying the prevailing party's motion for attorneys' fees and costs. And, as discussed below, the denial is without record support.

Tanaka contends the Santiagos' motion for attorneys' fees and costs was improperly filed. The Santiagos' motion for attorneys' fees was filed with a clerk of the appellate courts as an ex officio clerk of the district court. HRS § 606-1(b) provides the "respective clerks of the supreme court, intermediate appellate court, circuit courts, and district courts shall be ex officio clerks of all the courts of records, and as such may issue process returnable in all such courts." Contrary to the language of the statute, Tanaka contends the ex officio designation is for the *sole purpose* of issuing process returnable in all such courts. In Doe v. Doe, 98 Hawai'i 144, 44 P.3d 1085 (2002), the Hawai'i Supreme Court concluded the family court had jurisdiction over a motion where the movant submitted it to a circuit court clerk who accepted and date stamped the motion as received. Doe, 98 Hawai'i at 151, 44 P.3d at 1092. Additionally, Rules of District Courts of Hawai'i Rule 2.2(6) provides for an additional filing fee for ex officio filings. The Santiagos' motion for attorneys' fees and costs was properly filed.

Tanaka contends the Santiagos' motion for attorneys' fees and costs was prematurely filed. This contention is without merit. The district court orally ruled and issued a memorandum decision granting summary judgment in favor of the Santiagos before the motion for fees was filed. HRS § 607-14 provides: "the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment[.]" Emphasis added.

Tanaka contends that since the Santiagos initially argued she failed to state a claim in assumpsit, they are estopped from requesting fees under HRS § 607-14. This contention is without merit. HRS § 607-14 applies to "all actions in the nature of assumpsit." "The character of the

12

action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." Leslie v. Estate of Tavares, 93 Hawai'i 1, 6, 994 P.2d 1047, 1052 (2000) (citation omitted). Here, the facts and issues raised, nature of the entire grievance, and relief sought relate to agreements between the parties, namely, the Purchase and Sale Instruments.

**(2)  The district court did not abuse its discretion when it denied the Santiagos' motion for attorneys' fees and costs under HRS § 607-14.5.**

The district court denied the motion for attorneys' fees without determining whether or not Tanaka's claims were frivolous.  HRS § 607-14.5 provides that "the court may, as it deems just, assess against either party . . . a reasonable sum for attorneys' fees . . . upon a specific finding that . . . the party's claim or defense was frivolous . . . ."  HRS § 607-14.5 "allows the Court broad latitude to award or not award [attorneys'] fees 'as it deems just[.]'"  Jones v. Hawaii Residency Program, Inc., CIV. 07-00015 HG-BMK, 2008 WL 355562, 1 (D. Hawai'i 2008).  A claim is frivolous when it is so manifestly and palpably without merit as to indicate bad faith.  See Morrison-Knudsen Co., Inc. v. Makahuena Corp., 66 Haw. 663, 672 n.5, 675 P.2d 760, 767 n.5  (1983) (denying request for attorneys' fees under § 607-14.5 where appeal was without merit, but was not taken in bad faith).

The district court denied the Santiagos' motion to dismiss.  The record shows that Tanaka's claims invited argument and required the district court to look beyond the pleadings to determine whether the claims had merit.  And notably,

> [t]here are a multitude of situations that arise during litigation at the trial level that may contribute to the legal and strategic decisions made by each party; the trial judge is in the best position to ascertain the motivations of the parties and the reasonableness of actions undertaken by counsel and the parties.

Nelson v. Univ. of Hawai'i, 99 Hawai'i 262, 269, 54 P.3d 433, 440 (2002).  As such, we cannot conclude on this record that Tanaka's claims were manifestly and palpably without merit.  See generally Coll v. McCarthy, 72 Haw. 20, 30-32, 804 P.2d 881, 887-88 (1991) (lower court conclusion that claim was not frivolous overturned

13

in part because there was no need to look beyond the pleadings or invite argument to conclude that the claim was manifestly and palpably without merit).

## II. CONCLUSION

Accordingly, the (1) November 13, 2012 "Memorandum"; (2) December 21, 2012 "Order Granting Defendant's Motion for Summary Judgment on Ruth Tanaka's First Amended Complaint," (3) December 21, 2012 "Final Judgment," and (4) December 21, 2012 "Order Denying Plaintiff Ruth Tanaka's Motion for Reconsideration," all entered in the District Court of the Fifth Circuit, are affirmed. The December 21, 2012 "Order Denying Defendants Louis Robert Santiago and Yong Hwan Santiago's Motion for Attorney Fees and Costs," entered in the District Court of the Fifth Circuit, is vacated and remanded for a determination of reasonable attorneys' fees, consistent with this decision.

DATED: Honolulu, Hawai'i, July 16, 2014.

On the briefs:

Robert Goldberg
for Plaintiff-Appellant/Cross-Appellee.

Gary Victor Dubin
Frederick J. Arensmeyer
for Defendants-Appellees/Cross-Appellants.

Presiding Judge

Associate Judge

14